**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WILLIAM R. DAVIS                                         :              CIVIL ACTION

              v.                                                      :

MICHAEL J. ASTRUE,                                      :              NO. 07-cv-3119
COMMISSIONER OF SOCIAL SECURITY

———————————————

**MEMORANDUM RE: SOCIAL SECURITY**

Baylson, J.                                                                    **April 23, 2008**

Plaintiff, William R. Davis ("Mr. Davis," "Plaintiff") seeks judicial review of the

decision of the Commissioner of the Social Security Administration ("Commissioner,"

"Defendant") denying his application for Supplemental Security Income ("SSI") under the Social

Security Act ("the Act"), 42 U.S.C. § § 1381-1383(c).  Jurisdiction is established under § 405(g)

of the Act.  For the reasons that follow, the Court will deny Plaintiff's motion (Doc. No. 5) and

enter judgment in favor of Defendant, affirming the decision of the Commissioner.

I.        **Background and Procedural History**

          A.        Procedural History

          At the time the application was protectively filed, Plaintiff was a 43-year old man with a

high school education who is able to communicate in English.  (R. at 20).  Under the

Commissioner's regulations, Plaintiff is classified as a "younger individual."  (20 CFR 416.963).

          On April 22, 2004, Plaintiff protectively filed an application for SSI, alleging disability

began on May 9, 1998.  The claim was denied.  Plaintiff then filed written request for a hearing

on December 10, 2004.[1]  A hearing before Administrative Law Judge Dolores McNerney (hereinafter "the ALJ") was held on October 4, 2006, at which Mr. Davis, Richard B. Saul, M.D., a medical expert, and Denise D. Cordes, a vocational expert, all testified.  (R. at 14).

In her decision on October 27, 2006, the ALJ found that Plaintiff was not disabled.  (R. at 11-22).   Specifically, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).  The ALJ concluded that while Plaintiff is unable to perform any past relevant work and does not have any transferable job skills, Plaintiff is able to perform a job that exists in the national economy, such as that of a toll collector, parking lot cashier, or wire cutter.  (R. at 21).

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review and entered its final decision on May 22, 2007.  (R.at  4-6).

B.      History of Injury and Treatment

Plaintiff was injured while working on the asphalt crew for Scott Paving Company on April 8, 1997.  (R. at 309, 311).  Plaintiff alleges that the onset of his disability was May 9, 1998, and that his disability consists of chronic back and leg pain, fatigue, anxiety and Hepatitis C.  (R. at 74; Pl.'s Req. for Review at 2).  In his testimony, Plaintiff described going to a doctor after this workplace injury, and also going to doctors over the years for his mental problems.  (R. at 311, 313).

---

[1] Although the request was untimely, good cause was established for the late filing. (R. at 14).

In 2003, Plaintiff went to be examined by and have medical tests performed by Dr. Jyothi Chinta, M.D.  Dr. Chinta performed an MRI of the lumbar spine, which showed no evidence of a herniated or protruded disc, spinal or foraminal stenosis.  Dr. Chinta stated that the bone scan of Plaintiff was negative, and that Plaintiff sufferred from chronic narcotic dependence.  (R. at 129).  Due to this narcotic dependence, Dr. Chinta explained to Plaintiff that he needed to use the modalities and would not be receiving any more Viocodin from her office.  (R. at 129).

In 2004, a State Agency psychologist examined Plaintiff and found that Plaintiff had no medically determinable impairment, elaborating that no indication of mental health symptoms were reported to or observed by the treating medical staff.  (R. at 157, 169).  One month later, Plaintiff also went for a psychiatric assessment and evaluation with Dr. Gabino Ionogbanua, M.D.  Dr. Ionogbanua diagnosed Plaintiff as suffering from a panic disorder, generalized anxiety disorder, and post-traumatic stress-disorder.  (R. at 30).  Dr. Ionogbanua gave Plaintiff prescriptions for Lexapro and Valium, and encouraged him to consider individual therapy.  (R. at 30, 32).

Plaintiff testified that his pain has worsened in the last three years.  (R. at 316).  Plaintiff went to Community Hospital to seek help, where he still goes for treatment.  He testified, however, that he has missed a number of appointments and dislikes group therapy.  Plaintiff testified that he sees Dr. Gerald Dworkin, M.D. and Dr. Nicholas Giuliani, M.D.  He stated that Dr. Dworkin had attempted to give Plaintiff shots in his back to reduce the pain, but that Dr. Giuliani had discouraged it and thus Plaintiff had refused the treatment.  Plaintiff stated he is currently discussing plans for his future treatment with Dr. Giuliani.

Plaintiff testified that he has such severe pain that he is unable to work.  (R. at 311).  He stated that he is only able to stand comfortably for five to ten minutes at a time, sit for fifteen minutes at a time, and has difficulty walking.  (R. at 319).  Plaintiff is able to make simple food for him and his children and do easier household chores, such as dishes.  (R. at 322).  Plaintiff has trouble helping his children with their homework.  (R. at 321-322).  Plaintiff testified that to help handle the pain he experiences, he takes prescribed narcotics, including, but not limited to, Percocet and Xanax.  (R. at 319, 323).

## II.      Parties' Contentions

Plaintiff argues that his complaints of pain and other symptoms are consistent with and corroborated by the objective evidence in the record.  Plaintiff contends that the ALJ failed to consider pertinent evidence, such as relevant diagnostic studies, doctor's testimony and Plaintiff's own testimony, and thus wrongly concluded that Plaintiff does not suffer from disabling pain.  Plaintiff alleges that the effects of his multiple impairments could reasonably produce the symptoms he described.

Defendant contends that there is substantial evidence in support of the ALJ's decision that Plaintiff could perform a limited range of light work, and thus Plaintiff is not disabled under the SSA.  Defendant argues that the ALJ's decision is consistent with the statutory and regulatory scheme for evaluating disability claims, the ALJ properly evaluated Plaintiff's subjective complaints under 20 C.F.R. § 416.929, and the ALJ properly considered all of the medical evidence in the record.

## III.     Legal Standard

The standard of review of an ALJ's decision is plenary for all legal issues.  See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  The scope of the review of determinations of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision.  See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  As such, "[t]he Court is bound by the ALJ's finding of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); see also Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986) (holding if "an agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings").  The Court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder."  Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotation omitted).

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.  However, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  Id. (emphasis added).  Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the

record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."

Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

In order to establish a disability under the Social Security Act, a claimant must

demonstrate that she suffers from a mental or physical impairment that prevents her from

engaging in substantial gainful activity for a period of at least twelve months.  42 U.S.C. §

423(d); Stunkard v. Sec'y of HHS, 841 F.2d 57, 59 (3d Cir. 1988).

## IV.    Discussion

### A.    The ALJ Was Justified in Determining Plaintiff's Testimony Was Not Credible

In his Request for Review, Plaintiff extensively outlines the testimony and medical

records he believes support his complaints, asking this Court to "credit" his testimony and

reverse the ALJ's decision.  (Pl.'s Req. for Review at 18).  When making credibility findings, the

ALJ must indicate which evidence she rejects and which she relies upon as the basis for her

findings.  Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).

These findings must be specific enough to allow a reviewing court the opportunity to ascertain

which evidence was accepted, which was rejected, and the reasons why.  Cotter v. Harris, 642

F.2d 700, 705 (3d Cir. 1981).

In the present case, the ALJ set out legitimate and detailed reasons for her decision in a

clear and logical manner.  The ALJ considered and discussed Plaintiff's testimony.  Indeed, her

opinion states that "the undersigned finds that the claimant's medically determinable

impairments could reasonably be expected to produce the alleged symptoms."  (R. at 18).  The

ALJ goes on, however, to find that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible," reasoning that such complaints are not supported by the objective medical evidence.  (Id.).

First, the ALJ points to the fact that while Plaintiff has complained of back pain, there is no objective medical evidence to support such a complaint, and Plaintiff has pursued no treatment modality for the alleged back pain other than prescription medications.  Second, the ALJ reviews doctors' opinions which lack objective medical evidence to support Plaintiff's complaints.  Dr. Chinta conducted a bone scan with negative results, as well as a lumbar spine MRI which showed no evidence of herniated or protruded disc, spinal or foraminal stenosis (R. at 18).  Dr. Chinta noted that Plaintiff continually only requested pain medication, which she denied without objective evidence of such pain.  The ALJ also notes that in a letter, Dr. Dworkin noted that while Plaintiff had complained of lower back pain, he has declined the modality of treatment offered and only requested more narcotic pain medication.  (R. at 18-19).

The ALJ also pointed to the testimony of Dr. Saul, the medical expert, who testified that Plaintiff had been taking a high level of prescribed narcotics for a long period of time.  Dr. Saul concluded that such dependence on medication could potentially slow a person's reflex and thinking process. (R. at 19).

It is due to these doctors' findings, as well as Plaintiff's suspected chronic narcotic dependence, that the ALJ found Plaintiff's testimony to be not credible.  It is the ALJ, and not this Court, that is able to fully evaluate Plaintiff's credibility, as Plaintiff appears before the ALJ to give his testimony. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (finding it is the duty of the ALJ, and not the responsibility of the district court, to make findings

of fact and to resolve conflicts in the evidence).  As the ALJ's findings and analysis with respect

to Plaintiff's credibility are reasonable, this Court finds them sound.

      B.      The ALJ Properly Considered All of the Medical Evidence of Record

The Court of Appeals for the Third Circuit has repeatedly noted that "a cardinal principle

guiding disability eligibility determinations is that the ALJ accord treating physicians' reports

great weight, especially when their opinions reflect expert judgment based on a continuing

observation of the patient's condition over a prolonged period of time."  Morales v. Apfel, 225

F.3d 310, 317 (3d Cir. 2000).  See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999),

citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2)

(providing for controlling weight where treating physician opinion is well-supported by medical

evidence and not inconsistent with other substantial evidence in the record).  An ALJ has

discretion, however, to reject the opinions of doctors, including treating physicians, if their

findings are not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or they are inconsistent with other substantial evidence in the record.  20 C.F.R. §§

404.1527(d)(3), (4) (2006).

Plaintiff contends that the ALJ failed to consider certain evidence provided by his doctors

and medical tests, including testimony by Dr. Guiliani, the psychiatric medical expert, and MRI

results of the thoracic spine.  The ALJ clearly considered all of the relevant evidence, including

the above-mentioned opinions and test results.

With respect to Dr. Giuliani, the ALJ reviews all of his medical reports, stating that Dr.

Giuliani completed preprinted checksheets in which he indicated that Plaintiff is disabled and

unable to work. (R. at 19, citing Exhibits B10-F, B11-F).  The ALJ acknowledged that Dr.

Giuliani stated the disability is due to chronic back and right leg pain and that Plaintiff has limited mobility due to the pain. The ALJ further explains why she rejects Dr. Giuliani's medical opinion - while Dr. Giuliani did complete preprinted checksheets, he failed to provide any objective clinical evidence to support his diagnosis. Plaintiff fails to refute the accuracy of this conclusion, and the Court did not find any objective clinical evidence to support Dr. Giuliani's opinion. As the ALJ found his opinion to be inconsistent with the record and not supported by the objective medical evidence, the ALJ rejected Dr. Giuliani's diagnosis. Simply because a treating physician labels a claimant as disabled does not mean the Commissioner will determine that the individual is in fact disabled. (20 C.F.R.§ 416.927(e)). The ALJ was within her discretion to reject Dr. Giuliani's opinion after finding it was not well-supported by the other substantial evidence in the record.

Plaintiff argues the ALJ failed to consider the MRI of the thoracic spine performed on October 28, 2004. (R. at 235-7). There are two problems with this argument. First, while the ALJ did not explicitly discuss the MRI, the ALJ did consider the opinion of the doctor who performed the MRI, Dr. Dworkin. Indeed, the ALJ gave significant weight to Dr. Dworkin's medical opinion. (R. at 19). The ALJ references a letter, written by Dr. Dworkin to Dr. Giuliani, stating that Plaintiff complained of "much low back pain." The letter continued that the physical examination of Plaintiff revealed "good forward flexion" and revealed "no focal motor weakness." (R. at 232). While the ALJ's opinion does not explicitly reference the MRI, the ALJ cites directly to Dr. Dworkin's letter, which mentions his order of the MRI. Thus, it can be reasoned that the ALJ did not fail to notice the doctor's request for the MRI.

Second, the MRI results do not aid Plaintiff's case.  While the MRI noted "multilevel degenerative disc disease including a large right paracentral disc extrusion at T11-12," as Plaintiff points out, Dr. Dworkin concludes from the MRI that the disc disease only "mildly compresses the right ventrolateral cord" and "does not result in any cord signal abnormally."  (R. at 235).  From the MRI, Dr. Dworkin further finds that Plaintiff suffers from a small left paracentral disc protrusion that does not have "significant mass-effect" on the cord, and small central disc protrusion which "touches but does not compress the cord."  (Id.).  Thus, the ALJ considered Dr. Dworkin's opinion, and while she does not explicitly discuss the results of the MRI, there is enough substantial evidence in the record to support the ALJ's findings of fact. Indeed, a later MRI, performed by Dr. Giuliani, submitted to the Appeals Council confirmed Dr. Dworkin's conclusions, found that "[n]o marrow abnormalities" and "[n]o signal abnormality . . . in the thoracic spinal cord" were identified.  (R. at 290-291).

Finally, Plaintiff contends the ALJ failed to consider the medical expert's testimony with respect to the effects of depression and anxiety on pain.  The ALJ did discuss Dr. Saul's testimony, describing how Dr. Saul stated that Plaintiff's intake of a high level of prescribed narcotics over a long period of time would have slowed his reflex and thinking process, and that Plaintiff had mild to moderate impairment of concentration, persistence, and pace (R. at 19).  It is true that the ALJ did not specifically mention Dr. Saul's testimony regarding the effects of depression and anxiety on pain.  When asked by Plaintiff's counsel, "In your experience can depression and/or anxiety exacerbate someone's pain or perception of pain," Dr. Saul responded, "Definitely."  (R. at 342).  The Commissioner correctly points out in his Response, however, that this opinion does not necessarily support a finding that Plaintiff's allegations of pain were

entirely credible.  As discussed above, the ALJ evaluated Plaintiff's testimony and subjective complaints of pain, and found that he was not credible due to the lack of objective medical evidence in support of his testimony.  Dr. Saul's testimony concerning Plaintiff's perception of pain would have been more relevant had the ALJ found Plaintiff's own testimony to be credible.

The medical opinions in this case are conflicting.  The ALJ's finding that the conclusory opinion that Plaintiff is disabled is not supported by objective medical testimony is supported by an examination of the entire record.  For all of the above reasons, the Court concludes that the ALJ applied the correct legal standards in determining that Plaintiff does not qualify as suffering from a "disability" as defined in the SSA, and the ALJ's decision is supported by substantial evidence in the record.  As such, Plaintiff's motion shall be denied.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


WILLIAM R. DAVIS                                          :           CIVIL ACTION


                              v.                          :


MICHAEL J. ASTRUE,                                        :           NO. 07-cv-3119
COMMISSIONER OF SOCIAL SECURITY


## <u>ORDER</u>

        AND NOW, this 23rd day of April, 2008, upon careful and independent consideration of

Plaintiff William R. Davis's Motion for Request for Review, and review of the record, it is

hereby ORDERED that:

        (1)      Plaintiff's Motion (Doc No. 5) is DENIED;

        (2)      The clerk shall mark this case CLOSED for statistical purposes.



                                        BY THE COURT:



                                        /s/ Michael M. Baylson


                                        _____

                                        Michael M. Baylson, U.S.D.J.




O:\CIVIL 07-08\07-3119 Davis v. Astrue\07-3119 Davis v. Astrue - SS Memo.wpd